Robert WHITE, Plaintiff,

v.

BOMBARDIER CORPORATION,
et al., Defendants.

No. 3:03CV562/RV/MD.

United States District Court,
N.D. Florida,
Pensacola Division.

March 19, 2004.

Timothy M. O'Brien, Levin, Papantonio, Thomas, Etc., Pensacola, FL, for Robert White, Plaintiff.

Hillary Jacey Kaps, Rumberger, Kirk & Caldwell, Miami, FL, Scott Michael Sarason, Rumberger Kirk & Caldwell, Miami, FL, for Bombardier Corporation, Bombardier Inc., Bombardier–Rotax GMBH & Company KG, Destiny Aircraft Corporation, Destiny Powered Parachutes, Defendants.

## ORDER

VINSON, Chief Judge.

Plaintiff Robert White brought this action in state court against the defendants, Bombardier Corporation; Bombardier, Inc.; Bombardier–Rotax GMBH & Co., K.G.;[1] Destiny Aircraft Corporation; and Destiny Powered Parachutes, LLC.[2] The Bombardier defendants removed the action to this court, and the plaintiff now moves to remand. (Doc. 6).

## I. FACTUAL BACKGROUND

On February 10, 2003, the plaintiff filed this action in the Circuit Court for Escambia County, Florida, against defendants Bombardier Corporation; Bombardier, Inc.; Destiny Aircraft Corporation; and Destiny Powered Parachutes, LLC. Though Destiny Powered Parachutes, LLC, was clearly identified as a limited liability company, the complaint refers to Destiny Aircraft Corporation and Destiny Powered Parachutes, LLC collectively as "a Michigan Corporation conducting business at 1444 KDF Drive, Three Rivers, Michigan." The complaint further alleges that assertion of personal jurisdiction over the Destiny defendants by a Florida court is appropriate because "Destiny regularly

---

1. For the sake of simplicity, I refer to Bombardier Corporation and Bombardier, Inc. collectively as the "Bombardier defendants." Bombardier–Rotax GMBH & Co., K.G., has not yet been served.

2. I refer to Destiny Aircraft Corporation and Destiny Powered Parachutes, LLC collectively as the "Destiny defendants." I assume for purposes of this order, based on the affidavits of the parties, that Destiny Aircraft Corporation actually exists or existed. All of the other evidence in the record refers to Destiny Powered Parachutes, LLC.

places its products for sale in the stream of commerce which includes the state of Florida. Destiny also has authorized dealers, who sell and/or resell Destiny products, situated and located in Florida cities, such as the following: Dunellon; Jacksonville; Port Saint Lucie." The complaint alleges that Bombardier Corporation is a Vermont corporation conducting its business in Barre, Vermont, and that Bombardier, Inc., is a Canadian corporation conducting its business in Montreal, Quebec.

According to the complaint, at their plant in Michigan, the Destiny defendants were engaged in the manufacture, assembly, and distribution of "powered parachutes" or "powerchutes", which are mobile, propeller driven carts to which a parachute can be attached for the purpose of gaining altitude. Some time prior to November 15, 2000, Charles Smith, a former military pilot, purchased a two-seat powerchute from one of Destiny's authorized dealers in Nicholson, Georgia. On November 15, 2000, Smith invited the plaintiff to his home in Pensacola to help Smith in the maintenance of the powerchute engine. Smith and the plaintiff started the powerchute engine, which, because the engine has no clutch, also engaged the propeller. While the plaintiff was helping Smith start the engine, the cart began moving, ran over the plaintiff, and the propeller struck and severely injured him, rendering him permanently disabled. Count I of the complaint alleges common law negligence in the design and manufacture of the powerchute and engine. Count II alleges strict products liability. Count III alleges negligent failure to warn.

In February of 2001, because Smith had informed the plaintiff's attorney that he intended to repair the powerchute, the plaintiff's attorney's private investigator had taken custody of the powerchute to have it examined by a professional engineer. The plaintiff's attorney sent a letter by certified mail to Destiny Powered Parachutes inviting it to attend the inspection or to independently inspect the powerchute before it was repaired. The letter stated that, "In the very near future, we will be filing suit against your company for the severe injuries suffered by Mr. White as a result of the improper design of the Destiny Powerchute." [3] After he received the letter, a man named John Rivers from Destiny Powered Parachutes contacted the plaintiff's attorney, who referred the call to the private investigator. Rivers expressed uncertainty about whether the Destiny defendants would send an expert to examine the powerchute and identified an attorney in Michigan that handled the corporation's general business matters.

Summonses were issued on the complaint by the state court on February 11, 2003. The plaintiff's research of the state of Michigan's business records revealed, and the Bombardier defendants do not dispute, that John Rivers was the registered agent for both Destiny Aircraft Corporation and Destiny Powered Parachutes, LLC. The plaintiff's public records research indicated that 1444 KDF Drive, Three Rivers, Michigan, was the Destiny defendants' registered address, and the documents given to Smith about his Destiny Powerchute also indicate that the same address was their physical address. The plaintiff obtained the services of Bruce Morse, a deputy sheriff in St. Joseph County, Michigan, who is authorized to serve process under Michigan law, to serve the summons and complaint on Rivers at

---

**3.** The letter was apparently sent to 1444 KDF Drive, Three Rivers, Michigan.

the "1444 KDF Drive" address in Three Rivers, Michigan. On February 24, 2003, Morse went to that address, found Rivers there, and personally served him. A signature that, though difficult to discern, appears to be that of Rivers acknowledges receipt of service on behalf of the Destiny defendants on the return of service which was executed by Morse and later filed with the state court in Florida. The Bombardier defendants do not dispute that Rivers was personally served at the 1444 KDF Drive address by Morse. However, they contend that the 1444 KDF Drive address could not possibly have been the Destiny defendants' registered address because, on February 24, 2003, another business, Alliant Aviation, LLC, occupied that address. The Bombardier defendants submit the affidavit of Robert Taylor, the manager of Alliant Aviation, LLC, who avers that neither of the Destiny defendants did business at the 1444 KDF Drive address on the date of service and that he believes that the Destiny defendants were no longer in business. The return of service for Bombardier Corporation was filed on March 4, 2003.

The Destiny defendants did not respond to the complaint. On May 13, 2003, the plaintiff filed a motion for entry of default against the Destiny defendants under Florida Rule of Civil Procedure 1.500(a), due to their failure to respond. The state court clerk entered a default. On October 2, 2003, Bombardier Corporation filed a request for admissions, asking the plaintiff to admit that his damages exceeded $75,000. After some degree of difficulty, the plaintiff eventually served Bombardier, Inc. Apparently before the return of service was filed, on October 24, 2003, the plaintiff filed an amended complaint, naming Bombardier–Rotax GMBH & Co., K.G., an Austrian corporation, as

an additional defendant, though that defendant has still not been served. On November 14, 2003, the plaintiff responded to Bombardier Corporation's request for admissions, admitting that his damages exceeded $75,000. On December 12, 2003, Bombardier Corporation and Bombardier, Inc. filed a notice of removal, which was filed in state court on December 16, 2003. The action was removed to this court without the consent of the Destiny defendants, and the plaintiff now moves to remand.

## II. DISCUSSION

### A. Standard of Review

▮ Any civil case filed in state court may be removed to federal court by the defendant if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981). A removing defendant has the burden of establishing both federal jurisdiction and compliance with the procedures for removal, as a matter of fact and law. *See Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir.2002); *Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir.1998). In considering a motion to remand when a plaintiff and defendant disagree on issues of jurisdiction, statutes authorizing removal of actions to federal courts are to be strictly construed against removal and questions or doubts are to be resolved in favor of returning the matter to state court. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir.2001); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th

Cir.1994). The asserted federal jurisdiction in this case is based on diversity of citizenship under Title 28, United States Code, Section 1332. In order for a federal court to have jurisdiction over a case pursuant to the diversity statute, the amount in controversy must exceed $75,000, exclusive of costs and interest, and there must be complete diversity of citizenship. *See* 28 U.S.C. § 1332. There appears to be no dispute that this action satisfies the requirements of Section 1332. The parties are of diverse citizenship, and the plaintiff seeks damages in excess of $75,000. The only question concerns whether the Bombardier defendants needed to obtain the consent of the Destiny defendants to remove the action to this court.

### B. *The Rule of Unanimity*

■ "[T]he law is well settled that in cases involving multiple defendants all defendants must consent to the removal of a case to federal court." *Russell Corp., supra,* 264 F.3d at 1049; *In re Bethesda Mem'l Hosp.,* 123 F.3d 1407, 1410 (11th Cir.1997)("The failure to join all defendants in the petition is a defect in the removal procedure"). This judicially created rule is often referred to as the unanimity requirement. "Like all rules governing removal, [the] unanimity requirement must be strictly interpreted and enforced because of significant federalism concerns arising in the context of removal jurisdiction." *Russell Corp., supra,* 264 F.3d at 1044. To satisfy the unanimity requirement, each defendant must join in the removal by signing the notice of removal or by explicitly stating

for itself its consent on the record, either orally or (preferably) in writing, within the thirty day time period prescribed in Title 28, United States Code Section 1446(b). *Roe v. O'Donohue,* 38 F.3d 298, 301 (7th Cir.1994); *Diebel v. S.B. Trucking Co.,* 262 F.Supp.2d 1319, 1328 (M.D.Fla.2003). Here, it is undisputed that the Destiny defendants did not, and have not, expressly consented to the Bombardier defendants' removal, though the thirty day time period for expressing such consent has long since passed.

■ It is incumbent upon a party desiring to effect removal to provide "a short and plain statement of the grounds for removal" in its notice of removal. 28 U.S.C. § 1446(a). A petition for removal filed by less than all of the named defendants "is considered defective if it fails to contain an explanation for the absence of co-defendants." *Northern Illinois Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 273 (7th Cir.1982).[4] Thus, a removing defendant who fails to obtain the consent of a codefendant must explain in its petition for removal why that consent was not obtained. Such an explanation may involve an analysis of why one of the non-consenting codefendants falls within one of the recognized exceptions to the unanimity requirement.

■ There are at least four recognized exceptions to the unanimity requirement for removing defendants who are not federal officers or agencies. A removing defendant need not obtain consent: (1) of a defendant who has not yet been served with process;[5] (2) of a formal or nominal

---

4. Of course, a removal petition may be freely amended within the thirty day period specified in Title 28, United States Code, Section 1446(b). *Northern Illinois Gas Co. v. Airco*

*Indus. Gases,* 676 F.2d 270, 273 (7th Cir. 1982).

5. *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1429 (9th Cir.1984); *P.P.*

defendant;[6] (3) of a defendant who has been fraudulently joined; and (4) where, as provided in Title 28, United States Code, Section 1441(c), the case involves at least one "separate and independent" claim asserting a federal question.[7] It is undisputed that defendant Bombardier–Rotax GMBH & Company, KG, had not been served prior to removal, and thus its consent was not required. The record plainly reveals that the Destiny defendants, as the parties who actually manufactured the powered parachute which injured the plaintiff, are not formal or nominal defendants. The Bombardier defendants do not argue that the Destiny defendants have been fraudulently joined. Instead, the Bombardier defendants stated in their petition for removal, and argue in their memorandum in opposition to the plaintiff's motion to remand, that the Destiny defendants were not properly served with process and that the state court lacked personal jurisdiction over the Destiny defendants.

### 1. Whether the Destiny Defendants were Properly Served

■ I construe the Bombardier defendants' service of process argument to be that the Destiny defendants fall under the first exception to the unanimity requirement. Although it is unclear whether a defendant must be *properly* served in order to necessitate its consent to removal, the Bombardier defendants' argument that

effective service of process is necessary in order for a defendant's consent to be required is supported by the recent decision of the Supreme Court of the United States in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). In *Murphy Brothers, Inc.*, the Supreme Court stressed the importance of formal service of process (or waiver by the defendant) to bring a named defendant under the power of the court issuing process and to require the defendant to take action in the case. *Id.* at 350, 119 S.Ct. 1322 ("Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."). I agree with the Bombardier defendants that, in order for a defendant's consent to removal to be required, the defendant must have been properly served with process prior to the filing of the notice of removal.

■ The sufficiency of service of process prior to removal is determined under the law of the state from whence the case was removed. *Norsyn, Inc. v. Desai*, 351 F.3d 825, 829 (8th Cir.2003); *Lee v. City of Beaumont*, 12 F.3d 933, 936–37 (9th Cir. 1993). The Bombardier defendants contend that service of process on Rivers was ineffective because Rivers was not served at the "registered" or "principal" office of the Destiny defendants. The Bombardier

*Farmers' Elevator Co. v. Farmers Elevator Mut. Ins. Co.*, 395 F.2d 546, 547–48 (7th Cir.1968).

6. *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen & Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir.1970); *Diebel v. S.B. Trucking Co.*, 262 F.Supp.2d 1319, 1329 (M.D.Fla.2003); BLACK's LAW DICTIONARY 1145 (7th deluxe ed. 1999)(A nominal party is "a

party who, having some interest in the subject matter of a lawsuit, will not be affected by any judgment but is nonetheless joined in the lawsuit to avoid procedural defects.").

7. *Henry v. Indep., Amer. Sav. Ass'n*, 857 F.2d 995, 999 (5th Cir.1988).

defendants do not, however, offer any proof that 1444 KDF Drive was *not* the *registered* office of the Destiny defendants on the date of service. The record is undisputed that, on the date of service and unbeknownst to the plaintiff, the Destiny defendants were no longer in business at the 1444 KDF Drive address. However, that does not mean that their *registered* address was not 1444 KDF Drive or that Rivers was not present at that address when served. Regardless of whether service of process on the Destiny defendants must comply with Michigan or Florida law, it appears that the Destiny defendants were properly served by serving their registered agent at the registered address.[8] The Bombardier defendants have failed to demonstrate that service on either of the Destiny defendants was insufficient.

## 2. Whether the State Court Had Personal Jurisdiction over the Destiny Defendants

The Bombardier defendants also contend that the consent of the Destiny defendants was not required because the plaintiffs insufficiently pled allegations of personal jurisdiction regarding the Destiny defendants, and thus (apparently) the state court had no personal jurisdiction over the Destiny defendants even though they were, as discussed above, properly served. The unanimity requirement may not be excused merely because a removing defendant posits that the state court from whence the case was removed lacked personal jurisdiction over a non-consenting codefendant.[9] There are good reasons such an exception has not been recognized. Lack of personal jurisdiction is a personal defense. In diversity cases, proper consideration a court's personal jurisdiction over a defendant involves (1) evaluation of the complaint to determine if it adequately alleges either the language of the state long arm statute or facts sufficient to bring the complaint within the purview of a provision of that statute, and (2) the fact intensive inquiry into whether a defendant has sufficient contacts with a forum to comport with due process such that the defendant might reasonably anticipate being haled into court there. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir.1999); *Execu–Tech Bus. Sys. v. New Oji Paper Co.*, 752 So.2d 582, 584 (Fla. 2000); *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla.1989).

Allowing a defendant to remove a case without the consent of a codefendant based on the removing defendant's interpretation of the jurisdictional allegations of a complaint would give the removing defendant a right to assert another defendant's personal defense without that defendant's consent. A removing defendant could conceivably determine for itself that a state court lacks personal jurisdiction over a non-consenting codefendant and remove a case against the will of a non-consenting codefendant, circumventing the unanimity requirement altogether.

---

8. Both Florida and Michigan law permit effective service upon a corporation's or limited liability company's registered agent at the registered address. §§ 48.081(3), 608. 463(1), *Fla. Stat.* (2003); §§ 450.4207(2), 600.1920(1), *Mich. Comp. Laws* (2003).

9. Of course, were the jurisdictional allegations and forum contacts regarding a codefendant so tenuous such that no forum state court could exercise personal jurisdiction over the codefendant, the removing defendant could possibly argue that the non-consenting codefendant was fraudulently joined. However, the Bombardier defendants do not argue that the Destiny defendants were fraudulently joined.

Where, as here, only the jurisdictional allegations in a pleading are attacked, more specific allegations could be made by pre-removal amendment. *Pluess–Staufer Indus., Inc. v. Rollason Eng'g & Mfg., Inc.*, 597 So.2d 957 (Fla. 5th DCA 1992)(remanding for district court to set aside default based on complaint with insufficient allegations and to permit plaintiff to file an amended complaint). Also, absent a showing that the non-consenting defendant was fraudulently joined or that consent could not be obtained through the exercise of reasonable diligence, adjudication of the factual issues in the personal jurisdiction inquiry would be inappropriate without the participation of the defendant whose contacts are being examined.

Further, the defense of lack of personal jurisdiction is waivable by a defendant, either expressly or through conduct. Fla. R. Civ. Proc. 1.140(b); *PaineWebber, Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001)("[T]he requirement of personal jurisdiction is a waivable right, [and] 'there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.'", *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528, 540 (1985)). It is possible (though maybe unlikely) that

the Destiny defendants may subsequently, either expressly or impliedly, consent to litigating this case in Florida[10] in state court. "Removal, in and of itself, does not constitute a waiver of any right to object to lack of personal jurisdiction...." *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 347–48 (8th Cir.1988)(citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1395 but holding that a defendant's general appearance in state court by filing an answer and asserting affirmative defenses waived defense of lack of personal jurisdiction under state law); *see also Silva v. City of Madison*, 69 F.3d 1368 (7th Cir.1995)(removal did not obligate a defendant, who filed no other papers in state or federal court, to respond to complaint prior to proper service). If *removing* a case does not waive a defense of lack of personal jurisdiction, *consenting* to removal certainly does not, and the Destiny defendants would have suffered no prejudice to any defense by expressing their consent (or possibly objection) to removal and making a special appearance (in this court or the state court) to contest personal jurisdiction. I conclude that a removing defendant may not circumvent its obligation to obtain the consent of a codefendant by merely making a facial attack on the complaint's jurisdictional allegations as to the non-consenting codefendant.[11]

**10.** Ironically, I note that, for the relevant analysis in this diversity case, this court's jurisdiction over the Destiny defendants is coterminous with that of the Florida courts. *Meier ex. rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir.2002); *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 917–19 (11th Cir.1989). Thus, were the Bombardier defendants' argument accepted, this court, too, would lack jurisdiction over the Destiny defendants.

**11.** Although I need not decide the issue, the plaintiff's complaint appears to allege facts

which bring it within the purview of Section 48.193(1)(f)(2), *Florida Statutes* (2003), which specifically applies to products liability actions like this case. *See Davis v. Pyrofax Gas Corp.*, 492 So.2d 1044, 1046 (Fla.1986); *Wetzel v. Fisherman's Wharf of Pompano Beach, Inc.*, 771 So.2d 1195, 1198 (Fla. 4th DCA 2000)("A defendant's connection to Florida making it amenable to suit under the long-arm statute is established by the defendant's 'business activities in Florida' and not by focusing solely on how the product causing the injury entered the state."). The complaint

### 3. *The State Court's Entry of Default against the Destiny Defendants*

■ Although the Bombardier defendants have not expressly argued that the default entered against the Destiny defendants eliminated any need to obtain their consent, that occurrence does not necessarily, by itself, eliminate the consent requirement. My research has revealed no reported federal appellate court decision where a removing defendant has been excused from obtaining the consent of a co-defendant who as been personally served, but against whom a default has been entered for failure to appear and answer the complaint. All of the other judicially recognized exceptions to the unanimity requirement that relate to a defendant's status involve named defendants who either have not been properly made a party to the action or who have been named fraudulently to defeat removal, and thus are not proper parties at all. As discussed above, neither is the case here. However, I can appreciate the difficulty, under certain circumstances, with obtaining the consent of a defaulted co-defendant, and for that reason this issue warrants further discussion.

Under Florida law (at least since 1984), the entry of default against a defendant by the clerk does not terminate a defendant's participation in a case. Even after the entry of default, the defaulting party may continue to file pleadings and papers with the court, but the clerk is required to notify the party of the entry of default. Fla. R. Civ. Proc. 1.500(c); *In re Amendments to the Rules of Civil Procedure*, 458 So.2d 245, 255 (Fla.1984)("*Amendments*"). Allowing such post-default filing "enable[s]

the court to judge the effect, if any, of the filing of the paper upon the default and the propriety of entering final judgment without notice to the party against whom the default was entered." *Amendments, supra*, 458 So.2d at 255. The merits of such post-default filings may not be considered by a state court without an indication of a basis for setting aside the default by showing: (1) excusable neglect, (2) a meritorious defense, and (3) due diligence in seeking relief. *Johnson v. Johnson*, 845 So.2d 217, 220 (Fla. 2d DCA 2003); *Smith v. Rheaume*, 623 So.2d 625, 626 (Fla. 5th DCA 1993). However, Florida courts liberally construe motions to set aside defaults because of the public policy favoring deciding actions on their merits. *Johnson, supra*, 845 So.2d at 220. A party in default admits the complaint's well pleaded factual allegations, but not the complaint's conclusions of law, and may appear and contest the amount of damages prior to the entry of a default judgment. *Hospitality Ventures of Coral Springs, L.C. v. Amer. Arbitration Ass'n, Inc.*, 755 So.2d 159, 160 (Fla. 4th DCA 2000); *Days Inns Acquisition Corp. v. Hutchinson*, 707 So.2d 747, 749 (Fla. 4th DCA 1997). Where, as here, "an action involves unliquidated damages, a party against whom a default has been entered is entitled to notice of an order setting the matter for trial, and must be afforded an opportunity to defend." *Pierce v. Anglin*, 721 So.2d 781, 783 (Fla. 1st DCA 1998); *see also Fiera.com, Inc. v. DigiCast New Media Group, Inc.*, 837 So.2d 451, 452 (Fla. 3d DCA 2002).

I conclude that, consistent with a strict interpretation of the removal statutes in

---

alleges that, during Smith's maintenance of the powerchute in Florida, personal injuries were caused to the plaintiff in Florida by the Destiny defendants' negligent and/or defective design and manufacture of the powerchute in Michigan, and that at that time the Destiny defendants sold their products in Florida through their authorized dealers.

favor of remand, it is possible under some circumstances for the unanimity requirement to be excused with respect to a defaulted defendant who has not appeared. However, in order to excuse such consent, the removing defendant must allege with specificity in its petition for removal,[12] and prove upon challenge by a timely motion to remand, that the removing defendant has unsuccessfully exhausted all reasonable efforts to locate the defaulted defendant to obtain its consent. Conclusory allegations in an affidavit are insufficient. Instead, to sustain its burden on removal, the removing defendant must describe what efforts it took and those efforts must be consistent with the exercise of reasonable diligence, similar to that necessary for a plaintiff to establish a basis for substitute service. *See, e.g., Chapman v. Sheffield,* 750 So.2d 140, 143 (Fla. 1st DCA 2000); *Linn v. Kidd,* 714 So.2d 1185, 1188 (Fla. 1st DCA 1998); *Cross v. Kalina,* 681 So.2d 855, 856 (Fla. 5th DCA 1996).

Here, the Destiny defendants were still a part of this action, despite the entry of default against them for their failure to answer the complaint. The Destiny defendants could have filed a consent to removal in the state court even after the entry of default without waiving any challenge to personal jurisdiction. In this case, the registered agent of the Destiny defendants was personally served by the plaintiff, and the Bombardier defendants have made no showing that they have made any effort to contact the Destiny defendants to obtain their consent, though the Bombardier defendants have plainly had contact with the Destiny defendants' successor at the Destiny defendants' former place of business. Absent a showing by the Bombardier defendants that, despite the exercise of rea-

sonable diligence, the Destiny defendants could not be located to obtain their consent to removal, such consent remained required, despite the entry of default against the Destiny defendants. However, in the interests of justice, I will afford the Bombardier defendants an opportunity to make such a showing.

## III. CONCLUSION

Within fourteen (14) days, the Bombardier defendants are granted leave to file with this court any evidentiary materials and argument in support of their unsuccessful exhaustion of reasonable efforts to locate and obtain the consent of the Destiny defendants, in lieu of which this action shall be remanded to state court. Within fourteen (14) days after the Bombardier defendants' filings, the plaintiff may file a response.

### ORDER

The Bombardier defendants have failed to timely file any materials demonstrating their effort to obtain the consent of the Destiny Defendants. Therefore, for the reasons stated in my order of March 19, 2004, their removal was procedurally defective, and the plaintiff's motion to remand (doc. 6) is GRANTED. This action is REMANDED to the Circuit Court for Escambia County, Florida. However, because a reasonable basis existed for the Bombardier defendants' removal, the plaintiff's request for costs and fees is DENIED.

---

**12.** A requirement which I will excuse here

due to the novelty of the issue.