# Third District Court of Appeal

## State of Florida

Opinion filed January 19, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D20-1566, 3D20-1569, 3D20-1570
Lower Tribunal No. 17-1358

_____

**Amersham Enterprises, Inc., et al.,**
Appellants,

vs.

**Carlos Hakim-Daccach,**
Appellee.

Appeals from non-final orders from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Greenberg Traurig, P.A., and Elliot H. Scherker, Brigid F. Cech Samole, Humberto H. Ocariz, James E. Gillenwater, and Bethany J. M. Pandher, Reed Smith LLP, and Edward M. Mullins, and Cristina Cardenas, Latham & Watkins LLP, and Eric F. Leon, and Jason C. Hegt (New York, NY), Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, and David B. Levin (Fort Lauderdale), and Spencer Leach (Orlando), Fishman Haygood, L.L.P., and Kerry J. Miller (New Orleans, LA), for appellants.

Sequor Law, P.A., and Edward H. Davis, Jr., Arnoldo B. Lacayo, Amanda E. Finley, and Christopher A. Noel, Waldman Barnett, P.L., and Glen H. Waldman, for appellee.

Before HENDON, MILLER, and BOKOR, JJ.

MILLER, J.

Appellants, Jorge Hakim-Tawil, Arkata Investment, Inc., Ukiah International Corp., Leinster Garden Assets, Inc., Amersham Enterprises, Inc., Gyptec, S.A. (now known as Violet Investment Corp., S.A. En Liquidacion), Knauf Distribuidora, S.A.S., and Knauf de Colombia, S.A.S. (formally known as Logistics and Technical Services, S.A.S), nonresident defendants in an action brought by appellee, Dr. Carlos Hakim-Daccach, in the circuit court, challenge the denial of their respective motions to dismiss for lack of personal jurisdiction. The same appellants, along with Knauf International GmbH, challenge the denial of their motions to dismiss for forum non conveniens.[1] For the reasons that follow, we affirm the order under review.

## BACKGROUND

This proceeding traces its origins to a family dispute over Dr. Hakim-Daccach's ownership interests in certain foreign corporations. Mr. Hakim-Tawil is Dr. Hakim-Daccach's cousin. He is a Colombian national and resident, while Arkata, Ukiah, Leinster, and Amersham are Panamanian companies, Gyptec, Knauf Distribuidora, and Knauf de Colombia are Colombian entities, and Knauf International is a German company.

---

[1] We summarily reject all other contentions of error.

2

Distilled to its essence, the operative complaint alleges Mr. Hakim-Tawil fraudulently divested Dr. Hakim-Daccach of his one-third interest in Arkata and Ukiah, the former ninety-nine percent owners of Gyptec, a now liquidated company, by fraudulently canceling his share certificates and reissuing them to other entities.[2] His claims of ownership have been litigated in various tribunals in Panama and Colombia for over a decade.

The facts giving rise to this dispute are succinctly set forth in our earlier opinion, Gyptec, S.A. v. Hakim-Daccach, 299 So. 3d 481 (Fla. 3d DCA 2020), where we affirmed the imposition of a mandatory injunction involving certain funds derived from the liquidation sale of Gyptec. A portion of those funds remain escrowed in the Miami branch of Banco de Bogotá, S.A. As salient here,

> Dr. Hakim, a Florida resident and U.S. citizen, personally loaned $300,000 to his two cousins, Alejandro and Jorge Tawil. When the cousins failed to repay him, Dr. Hakim and his cousins made oral agreements to convert Dr. Hakim's outstanding loan into equity in the Colombian corporation, Gyptec, a company started by the Tawils and owned by two other Panamanian companies [Ukiah and Arkata]. Dr. Hakim alleges that he eventually acquired a one-third equity interest in Gyptec. There is no documentation to substantiate these alleged capital contributions or agreements, as everything was apparently done by oral agreement.

---

[2] Dr. Hakim-Daccach further alleges he directly owned ten shares in Gyptec, amounting to a less than one percent interest.

3

Dr. Hakim alleges that sometime in 2004 he gave his bearer bonds (or share certificates, representing 1000 shares each and his one-third interest) to his cousin, Jorge, to hold them for him as a fiduciary. In 2008, Dr. Hakim requested the return of the shares, but Jorge did not return the shares/certificates. In 2009, Dr. Hakim entered into a stock purchase agreement with Jorge, which document indicated that Dr. Hakim was a one-third owner of the company. This agreement was voided by a Colombian arbitration panel in 2011 (the "Arbitral Award"), which found the agreement null and void because Appellants[3] improperly assigned the agreement and defaulted. The Colombian arbitration panel found, however, that Dr. Hakim had an undisputed 33.33% ownership. The arbitration panel directed that Dr. Hakim be restored his "four shares," representing his one-third interest.[4] Tawil did not comply with the Arbitral Award, leading Dr. Hakim to litigate further in both Colombia and Panama, all of which concluded in Dr. Hakim's favor as to his one-third ownership interest.

In 2015, Gyptec sold its assets and operations to Knauf GmBH and its subsidiaries, without notice to Dr. Hakim. After doing its due diligence on Gyptec, however, Knauf required Gyptec to place $40 million of the purchase price into a restricted escrow account, and required $20 million of that to account for Dr. Hakim's one-third interest should his ownership claim prove valid. Those funds are held in escrow in Banco de Bogota's Miami branch.

. . . Dr. Hakim continues to allege that he owns one-third of Gyptec as a result of his and his father's significant monetary investments in that company, and that the Appellants have deprived him of his ownership interest. Dr. Hakim initially filed in federal court, and eventually the cause was remanded to state circuit court as a constructive trust claim.

---

[3] The appellants in the previous case were Mr. Hakim-Tawil, Arkata, Ukiah, Leinster, Amersham, and Gyptec.

[4] The Bogota Superior Tribunal affirmed this award, rendering it both final and nonappealable. The Supreme Court of Panama and the Panamanian Circuit Court subsequently granted recognition and enforcement.

> During the pendency of this case, Appellants transferred approximately $30 million of the escrow funds to offshore accounts in Panama and Colombia. Dr. Hakim immediately moved for a mandatory injunction to compel the return of the escrow funds pending determination of Dr. Hakim's ownership and entitlement, and a prohibitory injunction against further fraudulent transfers and dissipation of the escrow funds. After a lengthy evidentiary hearing, the trial court found that there was probable danger of dissipation of the Florida escrow funds, citing evidence of the Appellants transferring those specific, identifiable funds at issue in this case out of Florida without notice to the court or other parties to this case.

Id. at 482–83.

In addition to these facts, Dr. Hakim-Daccach alleges that, after the Arbitral Award was issued, Mr. Hakim-Tawil created or acquired two new Panamanian entities, Leinster and Amersham, canceled Dr. Hakim-Daccach's original share certificates, and reissued certificates to the two new entities. These share certificates purportedly represented Dr. Hakim-Daccach's indirect one-third ownership interest in Gyptec.[5]

In the current version of the complaint, Dr. Hakim-Daccach has alleged numerous torts, including conspiracy, fraudulent transfer, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, fraud, and aiding and abetting fraud. After the complaint was filed, all appellants, save

---

[5] The original share certificates represented Dr. Hakim-Daccach's one-third ownership in Arkata and Ukiah. Because these Panamanian entities owned over 99% of Gyptec, Dr. Hakim-Daccach claims to own 33.33% of Gyptec.

Knauf International,[6] sought dismissal, contending the jurisdictional allegations in the complaint were insufficient to withstand scrutiny.  The same defendants, along with Knauf International, further sought dismissal on forum non conveniens grounds.  The trial court conducted an extensive evidentiary hearing and, ultimately, denied all motions.  The instant appeal ensued.

During the pendency of this appeal, Dr. Hakim-Daccach, Banco de Bogota, S.A., and Fiduciaria Bogota, S.A., the Colombian financial entity acting as a trustee, reached a settlement.  Meanwhile, the Knauf entities proceeded to trial, at the conclusion of which a jury returned a verdict awarding damages to Dr. Hakim-Daccach in the amount of $19,500,000.00.  That award of damages is the subject of a separate, pending appeal.

## ANALYSIS

### Personal Jurisdiction

***Standard of Review***

Although we ordinarily conduct a de novo review of the denial of jurisdictional motions, Castillo v. Concepto Uno of Miami, Inc., 193 So. 3d

---

[6] Establishing general jurisdiction as to one co-conspirator does not dispense with the requirement to demonstrate any co-conspirator committed an overt act in furtherance of the conspiracy in the forum state.  See Matthews v. Brookstone Stores, Inc., 469 F. Supp. 2d 1056, 1068 (S.D. Ala. 2007) ("[P]laintiff's contention that the propriety of general jurisdiction over Brookstone Stores somehow dispenses with the need for any 'overt act' in Alabama by any alleged conspirator is misguided.").

6

57, 59 (Fla. 3d DCA 2016), "[w]here the trial court's decision [was] based on live testimony," we defer to the "trial court's determination as to the credibility of witnesses." Highland Stucco & Lime Prods., Inc. v. Oronato, 259 So. 3d 944, 947 (Fla. 3d DCA 2018).

***Two-Prong Jurisdictional Inquiry***

In the seminal case of Venetian Salami Co. v. Parthenais, the Florida Supreme Court articulated a two-prong inquiry for determining whether the exercise of jurisdiction over a nonresident defendant is proper. 554 So. 2d 499 (Fla. 1989). The initial inquiry is whether "the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of [Florida's long-arm] statute; and if it does, the next inquiry is whether sufficient 'minimum contacts' are demonstrated to satisfy due process requirements." Id. at 502 (quoting Unger v. Publisher Entry Serv., Inc., 513 So. 2d 674, 675 (Fla. 5th DCA 1987)).

The first prong is governed by Florida's long-arm statute, section 48.193, Florida Statutes (2021), which "bestows broad jurisdiction on Florida courts." Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000). The second prong is constitutional, thus, "controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement." Id. To satisfy due

7

process, "[a] court can exercise personal jurisdiction only if the foreign corporation maintains 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (second alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In this regard, "the defendant's conduct and connection with the forum State [must be] such that he [or she] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

***Florida's Long-Arm Statute***

Under Florida's long-arm statute, a plaintiff may establish general or specific jurisdiction. "Specific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (alteration in original) (quoting Arthur T. von Mehren & Donald T. Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)).

In the instant case, relying upon alleged conspiratorial and tortious conduct directed at Florida, along with certain business activities, the trial court found it could lawfully exercise specific jurisdiction over the

8

jurisdictional defendants pursuant to section 48.193(1)(a) of the long-arm statute. On appeal, the jurisdictional defendants assert that Dr. Hakim-Daccah failed to adequately allege any connexity between the allegations of wrongdoing and Florida. Because it is dispositive, we confine our examination to tort-based specific long-arm jurisdiction.

### *Tort-Based Specific Long-Arm Jurisdiction*

Section 48.193(1)(a), Florida Statutes, provides, in pertinent part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> . . . .
>
> 2. Committing a tortious act within this state.

Because Florida does not recognize an independent cause of action for civil conspiracy, a party asserting conspiracy jurisdiction under this section of the long-arm statute must allege that the underlying conspiratorial acts occurred within the state. See Tejera v. Lincoln Lending Servs., LLC, 271 So. 3d 97, 103 (Fla. 3d DCA 2019); see also Casita, L.P. v. Maplewood Equity Partners L.P., 960 So. 2d 854, 857 (Fla. 3d DCA 2007) ("The [long-arm] statute expressly requires that the tort be committed in Florida."). In this context, this court has held that "a tort claim 'is deemed to have accrued where the

9

last event necessary to make the defendant liable for the tort took place.'" Envases Venezolanos, S.A. v. Collazo, 559 So. 2d 651, 652 (Fla. 3d DCA 1990) (quoting Tucker v. Fianson, 484 So. 2d 1370, 1371 (Fla. 3d DCA 1986)).

Here, the jurisdictional defendants correctly assert the core allegations of the initial fraud concern the cancellation and later reissuance of the share certificates. These particular acts were perpetrated by foreign domiciliaries abroad. The operative complaint, however, contains much more expansive allegations concerning the continuation of the conspiracy and the later misuse of the escrow account within the State of Florida. Thus, a closer examination is required.

It is well-settled that the mere maintenance of an escrow or bank account, without more, is insufficient to justify the exercise of personal jurisdiction over a nonresident. See Meraki Invs., Ltd. v. Unit 1805 Inc., 319 So. 3d 718, 721 (Fla. 3d DCA 2021) ("[Appellee]'s maintenance of a bank account is insufficient to confer the trial court with general personal jurisdiction."); La Reunion Française, S.A. v. La Costeña, 818 So. 2d 657, 659 (Fla. 3d DCA 2002) ("The only possible connection between this policy and Florida was the Honduran insurance broker's maintenance of a Florida bank account . . . . That contact is too tenuous to support an assertion of

10

jurisdiction."); <u>Taylor v. Gutierrez</u>, 129 So. 3d 415, 420 (Fla. 3d DCA 2013) (holding that maintenance of a Florida bank account was insufficient to allow the exercise of personal jurisdiction over a nonresident). Similarly, a conspiracy to transfer and conceal the transfer of funds or fraudulent conveyance, in and of itself, does not confer jurisdiction under the long-arm statute. <u>See</u> <u>Brown v. Nova Info. Sys., Inc.</u>, 903 So. 2d 968, 969 (Fla. 5th DCA 2005).

In this case, the complaint claims Mr. Hakim-Tawil fraudulently structured the asset agreement to divest Dr. Hakim-Daccach of money to which he is entitled by virtue of his ownership interest in Gyptec. In the same vein, it alleges that the escrow account was created to serve as an instrumentality for facilitating the fraudulent asset sale, and funds within the account were unlawfully converted within Florida by members of the conspiracy. While the jurisdictional defendants persuasively argue that the creation of the escrow served a legitimate purpose and the later release of funds was fully authorized, as aptly observed by the trial court, the proper inquiry below concerned only "whether the tort *as alleged* occurred *in Florida*, and not whether the alleged tort *actually occurred*." <u>Walter Lorenz Surgical, Inc. v. Teague</u>, 721 So. 2d 358, 359 (Fla. 1st DCA 1998); <u>see also</u> <u>Wendt v.</u>

11

<u>Horowitz</u>, 822 So. 2d 1253, 1253 (Fla. 2002). Consequently, the allegations alone were sufficient to establish that conspiratorial acts occurred in Florida.

Under Florida law, "each conspirator is liable for and bound by the act and declaration of each and all of the conspirators done or made in furtherance of the conspiracy even if not present at the time." <u>Wilcox v. Stout</u>, 637 So. 2d 335, 337 (Fla. 2d DCA 1994). It follows that "acts of a conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy and that personal jurisdiction over a nonresident coconspirator may be exercised even absent sufficient personal minimum contacts with the forum if those contacts are supplied by another." 21 C.J.S. <u>Courts</u> § 63 (2021). Accordingly, "the conspiracy theory of personal jurisdiction is viewed as consistent with the requirements of due process." <u>Id.</u>

In the instant case, Dr. Hakim-Daccach alleged with adequate specificity that all jurisdictional defendants engaged in a common plan to defraud him of his holdings. This was sufficient to meet his burden of establishing an agreement between Mr. Tawil-Hakim and the other defendants to inflict harm upon him. Because he independently alleged the commission of overt acts in Florida in furtherance of that agreement, "all of the [alleged] conspirators are subject to the jurisdiction of Florida through its

12

long-arm statute." NHB Advisors, Inc. v. Czyzyk, 95 So. 3d 444, 448 (Fla. 4th DCA 2012).

***Minimum Contacts***

The second prong of the personal jurisdiction analysis requires us to determine whether the jurisdictional defendants "purposefully directed" their activities at a resident of the state "and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (first quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); and then quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Our Supreme Court has previously held that directing a conspiracy and tortious conduct toward Florida satisfies both specific long-arm jurisdiction and the due process concerns implicated in a minimum contacts analysis. See § 48.193(1)(a)(2), Fla. Stat.; Machtinger v. Inertial Airline Servs., Inc., 937 So. 2d 730, 736 (Fla. 3d DCA 2006) ("Directing a conspiracy toward Florida establishes sufficient minimum contacts to satisfy due process."); Ileyac Shipping, Ltd. v. Riera-Gomez, 899 So. 2d 1230, 1232 (Fla. 3d DCA 2005) (quoting Godfrey v. Neumann, 373 So. 2d 920, 922 (Fla. 1979)) ("[B]y committing a tort in Florida a nonresident defendant establishes 'minimum contacts' with Florida to justify the acquisition of in personam jurisdiction over

13

him . . . .").  adhering to this precedent, we conclude that Dr. Hakim-Daccach has met his burden in establishing that traditional notions of fair play would not be offended by the exercise of personal jurisdiction.

## Forum Non Conveniens

While the jurisdictional issues dominated the lower court proceedings, all defendants further urge error in the denial of the forum non conveniens motions.  The balancing of the factors initially adopted in Kinney System, Inc. v. Continental Insurance Co., 674 So. 2d 86, 90–92 (Fla. 1996) and later codified in Florida Rule of Civil Procedure 1.061 is a task generally committed to the sound discretion of the lower tribunal.  Although the defendants convincingly argue on appeal that the trial court erred in eschewing Colombia as an adequate alternative forum, the parties presented conflicting evidence regarding the remaining Kinney factors.  See Kinney, 674 So. 2d 86 (Fla. 1996); Fla. R. Civ. P. 1.016(a).  The order under review reflects that the trial court carefully resolved the conflicts and weighed all relevant considerations.  While reasonable minds may differ as to the result reached, we decline, as we must, to "substitute [our] judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court,"

14

Goldfarb v. Robertson, 82 So. 2d 504, 506 (Fla. 1955), as this "is not the function of the appellate court." Shaw v. Shaw, 334 So. 2d 13, 16 (Fla. 1976).

Further, we are mindful that ordinarily, "a forum non conveniens claim . . . fails to survive the mooting effect of the actual litigation of the suit in the putative inconvenient forum." Demenus v. Tinton 35 Inc., 873 F.2d 50, 54 (3d Cir. 1989). That is because "the work that the [forum non conveniens] doctrine does to avoid inconvenience to the parties and the forum [is] already . . . undermined [where] a case makes it to final judgment" and transferring the case to another forum after the trial is "inconvenient, costly, and time consuming." Matthew J. Eible, Making Forum Non Conveniens Convenient Again: Finality and Convenience for Transnational Litigation in U.S. Federal Courts, 68 Duke L.J. 1193, 1207 (2019). And, here, the Knauf entities have already proceeded to trial.

In conclusion, the decision below is well-supported by both fact and law. Accordingly, we affirm the orders under review.

Affirmed.