# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-3493
Lower Tribunal No. 2019-CA-000642-O

_____

JANET THORPE, as Personal Representative of the ESTATE OF JENNIFER PALMER,

Appellant,

v.

MEMORIAL SLOAN-KETTERING CANCER CENTER, SAM SUNGHYUM YOON, M.D., and SINCHUN HWANG, M.D.

Appellees.

_____

Appeal from the Circuit Court for Orange County.
Eric J. Netcher, Judge.

April 17, 2025

MIZE, J.

Appellant, Janet Thorpe ("Appellant"), appeals the trial court's order dismissing her second amended complaint for lack of personal jurisdiction over the Appellees, Dr. Sam Sunghyum Yoon ("Dr. Yoon"), Dr. Sinchun Hwang ("Dr. Hwang"), and Memorial Sloan-Kettering Cancer Center ("Memorial Sloan-Kettering" and, together with Dr. Yoon and Dr. Hwang, the "Appellees"). We affirm.

**Background and Procedural History**[1]

Appellant is the mother and personal representative of the estate of Jennifer Palmer ("Palmer"). Palmer lived in Florida from 1987 to 2012, and again from 2015 until her death in 2021. Between 2012 and 2015, Palmer lived in the State of New York.

While living in New York, Palmer visited Memorial Sloan-Kettering, a New York corporation and cancer treatment center located in New York, for consultation regarding a left proximal media thigh mass. Once at Memorial Sloan-Kettering, Palmer was evaluated by Dr. Yoon. Dr. Yoon is a surgeon at Memorial Sloan-Kettering and is licensed to practice medicine in the State of New York. After initial testing and evaluation revealed cancer in her thigh, Palmer was scheduled for surgery with Dr. Yoon at Memorial Sloan-Kettering in New York. After the surgery, Palmer underwent various follow up tests at Memorial Sloan-Kettering, including an MRI that was interpreted by Dr. Hwang, a radiologist at Memorial Sloan-Kettering in New York. The MRI showed that Palmer's cancer had spread into her bone. Appellant alleges that despite the MRI showing the spread of cancer into Palmer's bone, Dr. Yoon did not see Palmer for a follow up appointment until three

---

[1] The facts stated herein are as alleged in Appellant's second amended complaint filed in the trial court, which as detailed below, was the final operative complaint dismissed by the trial court for lack of personal jurisdiction over the Appellees.

2

weeks after the MRI was performed. Appellant further alleges that at the follow up appointment, which also occurred in New York, Dr. Yoon failed to identify additional signs that the cancer had spread and also failed to order further testing and treatment that should have been ordered.

In 2016, after Palmer moved back to Florida, Dr. Yoon referred Palmer to a new doctor, Dr. Jones, at a cancer treatment center in Orlando, Florida. Dr. Jones continued Palmer's treatment. Ultimately, the cancer spread into Palmer's bone marrow, and she tragically passed away.

Palmer and her husband filed the original complaint in this action prior to her death. The original complaint sued the Appellees, along with multiple other defendants, including Dr. Jones and the cancer treatment center in Orlando, for medical malpractice. The Appellees filed a motion to dismiss the complaint based on lack of personal jurisdiction, which the trial court granted with leave to the plaintiffs to amend. Upon Palmer's passing, Appellant, as the personal representative of Palmer's estate, was substituted as the plaintiff and filed an amended complaint. When the Appellees responded with another motion to dismiss, Appellant received leave to file a second amended complaint which contained additional jurisdictional allegations against the Appellees.[2] The Appellees

---

[2] The second amended complaint removed all defendants except the Appellees.

3

responded with another motion to dismiss for lack of personal jurisdiction, along with supporting affidavits from Dr. Yoon and Dr. Hwang. Appellant filed an affidavit executed by Palmer before her death.

The trial court ultimately granted the motion to dismiss and dismissed the second amended complaint for lack of personal jurisdiction. On appeal, Appellant argues that the trial court erred because the court possessed long-arm jurisdiction over Dr. Yoon and Dr. Hwang under Sections 48.193(1)(a)2. and 48.193(1)(a)6. of Florida's long-arm statute. Appellant argues that because the trial court possessed long-arm jurisdiction over Dr. Yoon and Dr. Hwang, it also possessed long-arm jurisdiction over Memorial Sloan-Kettering since the doctors were acting as agents of Memorial Sloan-Kettering when they committed medical malpractice against Palmer. Lastly, Appellant argues that Memorial Sloan-Kettering, Dr. Yoon and Dr. Hwang all had sufficient minimum contacts with Florida such that subjecting them to personal jurisdiction in Florida would not have denied them due process.

## Analysis

### I.    Standard of Review

"The issue of personal jurisdiction is a pure question of law, and we review an order on a motion to dismiss *de novo*." *Consol. Energy Inc. v. Strumor*, 920 So. 2d 829, 831 (Fla. 4th DCA 2006) (citing *Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 584 (Fla. 2000), *cert. denied*, 531 U.S. 818 (2000)).

4

## II.     The *Venetian Salami* Two-Step Process

The Florida Supreme Court in *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989), set forth a two-step process for determining whether a court possesses personal jurisdiction over a defendant. *Execu–Tech*, 752 So. 2d at 584. "First, the court must determine whether the operative complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the long-arm statute." *Robinson Helicopter Co., Inc. v. Gangapersaud*, 346 So. 3d 134, 138 (Fla. 2d DCA 2022) (quoting *Venetian Salami Co.*, 554 So. 2d at 502 (internal quotations, alterations omitted)). "If it does, the next inquiry is whether sufficient minimum contacts are demonstrated to satisfy due process requirements." *Robinson Helicopter*, 346 So. 3d at 138-39 (quoting *Venetian Salami Co.*, 554 So. 2d at 502 (internal quotations, alterations omitted)). "Both parts must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant." *Arch Aluminum & Glass Co., Inc. v. Haney*, 964 So. 2d 228, 232 (Fla. 4th DCA 2007) (quoting *Am. Fin. Trading Corp. v. Bauer*, 828 So. 2d 1071, 1074 (Fla. 4th DCA 2002)). Therefore, "[i]f Florida's long-arm statute does not provide a basis for personal jurisdiction under the initial statutory prong of this inquiry, the constitutional analysis is unnecessary." *Homeway Furniture Co. of Mount Airy, Inc. v. Horne*, 822 So. 2d 533, 536 (Fla. 2d DCA 2002); *see also Rautenberg v. Falz*, 193 So. 3d 924, 930 (Fla. 2d DCA 2016) ("When the plaintiff fails to meet the first prong of the

5

*Venetian Salami* test, the court need not consider the minimum contacts aspect." (quoting *PK Computs., Inc. v. Indep. Travel Agencies of Am., Inc.*, 656 So. 2d 254, 255 (Fla. 4th DCA 1995) (internal quotations omitted))).

The plaintiff bears the initial burden to plead a basis for jurisdiction over the defendant. *Robinson Helicopter*, 346 So. 3d at 139. Therefore, the plaintiff must allege a basis for personal jurisdiction under the long-arm statute. *Id.* In alleging a basis for long-arm jurisdiction, "the plaintiff may either track the statutory language without supporting facts or allege specific facts to show that the defendant's actions fall within at least one of the subsections of section 48.193." *Rautenberg*, 193 So. 3d at 928. The plaintiff must also allege that the nonresident defendant has sufficient minimum contacts with the State of Florida such that the exercise of personal jurisdiction over the defendant by a Florida court would not offend traditional notions of fair play and substantial justice. *Robinson Helicopter*, 346 So. 3d at 139.

"If the plaintiff meets this initial pleading requirement, the defendant may contest the plaintiff's jurisdictional allegations by filing a legally sufficient affidavit or other sworn proof to the contrary."[3] *Id.* (quoting *Rautenberg*, 193 So. 3d at 928 (internal quotations omitted)). "The defendant need not contest the ultimate

---

[3] It logically follows that if a plaintiff has not met its initial pleading burden, a defendant may file a motion to dismiss without filing sworn proof merely on the basis that the plaintiff's complaint does not meet the plaintiff's initial burden to plead a basis for personal jurisdiction.

allegations of the complaint but only the jurisdictional allegations." *Rautenberg*, 193 So. 3d at 928-29. "If the defendant's affidavit fully disputes the jurisdictional allegations, then the burden shifts back to the plaintiff to prove by affidavit or other sworn proof that there is a basis for long-arm jurisdiction." *Id*. at 929. "Should the plaintiff fail to produce sworn proof refuting the defendant's allegations and establishing jurisdiction, the defendant's motion to dismiss must be granted." *Robinson Helicopter*, 346 So. 3d at 139.

If the affidavits produced by the plaintiff and the defendant can be harmonized, then the trial court can determine the issue of personal jurisdiction as a question of law based on the undisputed facts. *Rautenberg*, 193 So. 3d at 929. If the affidavits are in conflict and cannot be harmonized, then the trial court must conduct a limited evidentiary hearing to resolve the issue. *Id*.; *Law Offices of Sybil Shainwald v. Barro*, 817 So. 2d 873, 876 (Fla. 5th DCA 2002).

## III.    Long-Arm Jurisdiction over the Appellees

In this case, as noted above, Appellant argues that the trial court possessed long-arm jurisdiction over the Appellees under sections 48.193(1)(a)2. and 48.193(1)(a)6. of the long-arm statute. For the reasons explained below, we disagree.

**(a)    Section 48.193(1)(a)6.**

Since our discussion of Section 48.193(1)(a)6. will inform our discussion of

Section 48.193(1)(a)2., we begin with Section 48.193(1)(a)6., which provides:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> . . . .
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> a. The defendant was engaged in solicitation or service activities within this state; or
>
> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

**i.    Section 48.193(1)(a)6.a.**

Appellant first argues that Dr. Yoon and Dr. Hwang are subject to personal

jurisdiction under Section 48.193(1)(a)6.a.  In support of this argument, Appellant

asserts that the second amended complaint alleges that Dr. Yoon and Dr. Hwang

engaged in the following "service activities" within Florida: (1) Dr. Yoon referred

Palmer to the Orlando cancer center while Palmer was a resident of Florida; (2) both

Dr. Yoon and Dr. Hwang performed tests and rendered written reports and analyses

that were ultimately used in Florida by Palmer's Florida healthcare providers; (3)

8

Dr. Yoon "contacted" Palmer's Florida healthcare providers about his diagnosis and his professional opinion regarding her condition; and (4) Dr. Yoon and Dr. Hwang sent medical bills to Palmer in Florida.

While the second amended complaint makes these allegations, and the Appellees' affidavits filed in support of their motion to dismiss do not refute them, none of these allegations establish that Dr. Yoon and Dr. Hwang engaged in "service activities within this state." The second amended complaint does not allege that Dr. Yoon's referral of Palmer to the Orlando cancer center is something that occurred in Florida. The second amended complaint does not allege that Dr. Yoon was located in Florida when he made the referral or that it involved Dr. Yoon making contact with Florida in any way, as opposed to Dr. Yoon simply recommending to Palmer while he was treating her in New York that she contact the Orlando cancer center. As well, the fact that Dr. Yoon and Dr. Hwang performed tests and rendered reports in New York that were later used in Florida does not change the fact that the service activities that Dr. Yoon and Dr. Hwang engaged in – the tests and the writing of the reports – occurred in New York. When a record of a service activity that occurred in New York makes its way into Florida, the fact that the record of the service activity entered the State of Florida does not retroactively change the location where the service activity occurred from New York to Florida. Likewise, sending a bill to a person in Florida for a service activity that occurred in New York does not change

9

the location where the actual service activity occurred, which in this case was New York.

As to the allegation that Dr. Yoon "contacted" Palmer's Florida healthcare providers about his diagnosis and his professional opinion, this does not constitute "service activity within" the State of Florida. While the Florida Supreme Court has held that a communication initiated outside of Florida but directed into Florida may, when the communication itself is tortious, constitute a "tortious act within this state" under Section 48.193(1)(a)2., *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002), the Florida Supreme Court has never held that an unspecified[4] form of contact initiated outside of Florida to someone located in Florida through an unspecified medium constitutes a "service activity within" the State of Florida under Section 48.193(1)(a)6.a. Nor is that a natural reading of the phrase "service activities within Florida."

Moreover, the second amended complaint does not actually allege that Dr. Yoon's contact with Palmer's Florida healthcare providers involved communications with someone located in the State of Florida. *See* Note 10, *infra*. Appellant's argument assumes that Dr. Yoon contacted someone located in Florida when the complaint does not make that allegation.

---

[4] The second amended complaint does not allege whether Dr. Yoon contacted Palmer's Florida healthcare providers by telephone, email, mail, courier or otherwise.

10

Lastly, as to all of these allegations, on its face, Section 48.193(1)(a)6. requires a temporal connection between the service activity engaged in by the defendant in the State of Florida and the injury suffered by the plaintiff as a result of an out of state act or omission by the defendant. Section 48.193(1)(a)6.a. states that a person subjects himself or herself to "the jurisdiction of the courts of this state for any cause of action arising from . . . [c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, *at or about the time of the injury* . . . [t]he defendant was engaged in…service activities within this state." (emphasis added). However, no part of the second amended complaint alleges that Palmer's injuries caused by the Appellees' acts or omissions in New York occurred "at or about the time" that the Appellees engaged in any of the acts that Appellant asserts were "service activities" within Florida. Without the temporal connection between Palmer's injuries and the "service activities" of the Appellees required by the statute, Appellant has not alleged a basis to establish long-arm jurisdiction over the Appellees under section 48.193(1)(a)6.a.

### ii.     Section 48.193(1)(a)6.b.

Appellant also argues that Dr. Yoon and Dr. Hwang are subject to personal jurisdiction under Section 48.193(1)(a)6.b. because "[p]roducts, materials, or things processed, serviced, or manufactured by" Dr. Yoon and Dr. Hwang were used within Florida "in the ordinary course of commerce, trade, or use." However, Appellant's

11

argument fails again because Section 48.193(1)(a)6.b. requires a temporal connection between the time that products, materials, or things processed, serviced, or manufactured by the defendant were used in Florida and the injury suffered by the plaintiff as the result of an out of state act or omission by the defendant. No part of the second amended complaint alleges that Palmer's injuries occurred "at or about the time" that any products, materials, or things processed, serviced, or manufactured by the defendant were used in Florida. Without the temporal connection required by the statute, Appellant has not alleged a basis to establish long-arm jurisdiction over the Appellees under Section 48.193(1)(a)6.b.

Even aside from failing to allege the required temporal connection, Appellant's second amended complaint also failed to allege that products, materials, or things processed, serviced, or manufactured by the Appellees were used in Florida. Appellant argues that the complaint does make such an allegation when it alleges that Dr. Yoon and Dr. Hwang drafted written reports containing their diagnoses and recommendations which were later used in Florida during the ordinary course of Palmer's treatment in Florida. However, while a report is certainly a "thing," the writing of a report does not constitute "processing," "servicing," or "manufacturing" the report. The ordinary meaning of "processing," "servicing," or "manufacturing" a "thing" does not include simply writing a written

document.[5] *See Nunes v. Herschman*, 310 So. 3d 79, 82 (Fla. 4th DCA 2021) ("Where the legislature has not defined words in a statute, the language should be given its plain and ordinary meaning." (citing *Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc.*, 3 So. 3d 1220, 1233 (Fla. 2009))). Without an allegation that some product, material, or thing processed, serviced, or manufactured by the Appellees was used in Florida, Appellant has not alleged a basis to establish long-arm jurisdiction over the Appellees under Section 48.193(1)(a)6.b.

In *Dean v. Johns*, 789 So. 2d 1072, 1077 (Fla. 1st DCA 2001), the First District held that an out of state doctor's writing of a written report containing the doctor's diagnoses and recommendations does constitute "processing," "servicing," or "manufacturing" the report for purposes of Section 48.193(1)(a)6.b.[6] Because

---

[5] At oral argument, Appellant conceded that the writing of a report is not within the plain and ordinary meaning of "servicing" or "manufacturing" the report. Appellant argued, however, that the writing of a report is within the plain and ordinary meaning of "processing" a report. It is not. *See The Merriam-Webster Dictionary* 398 (2019) (defining "process" as "to subject to a special process"); *The Oxford English Dictionary* 548 (2d ed. 1989) (defining "process" as "[t]o subject to or treat by a special process"); *Merriam-Webster's Collegiate Dictionary* 990 (11th ed. 2009) (defining "process" as "to subject to or handle through an established usu. routine set of procedures"); *The American Heritage Dictionary of the English Language* 1404 (5th ed. 2018) (defining "process" as "[t]o put through the steps of a prescribed procedure").

[6] *Dean* was decided under a prior version of Section 48.193, Florida Statutes. In the prior version of the statute, Section 48.193(1)(a)6. was numbered as Section 48.193(1)(f). However, the language of this provision was the same in all material respects.

this holding is irreconcilable with our own, we certify this decision to be in direct conflict with *Dean* as to this holding.[7]

**(b)    Section 48.193(1)(a)2.**

Section 48.193(1)(a)2. provides:

(1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
. . .
2. Committing a tortious act within this state.

### i.    Out of state acts causing injury in Florida

Appellant asserts that Dr. Yoon and Dr. Hwang are subject to jurisdiction in Florida under this provision because they committed medical malpractice against Palmer when they treated her in New York, and their acts and omissions constituting the medical malpractice continued to injure Palmer after she returned to Florida. Thus, Appellant argues that a person who commits a tortious act outside of Florida that causes injury inside of Florida has "[c]ommitt[ed] a tortious act within" Florida under this provision. The Second, Third, Fourth and Fifth Districts have each

---

[7] As discussed below, the facts of *Dean* that pertained to its holding concerning Section 48.193(1)(a)2. were very different from this case. However, with respect to the limited issue of *Dean*'s holding under Section 48.193(1)(a)6.b. that an out of state doctor's writing of a written report containing the doctor's diagnoses and recommendations constitutes "processing," "servicing," or "manufacturing" the report, the relevant facts of *Dean* are the same as this case.

14

rejected this argument. *See Homeway Furniture Co.*, 822 So. 2d at 539; *Ernie Passeos, Inc. v. O'Halloran*, 855 So. 2d 106, 109 (Fla. 2d DCA 2003); *Casita, L.P. v. Maplewood Equity Partners L.P.*, 960 So. 2d 854, 855-56 (Fla. 3d DCA 2007); *Arch Aluminum*, 964 So. 2d at 232 (citing *Korman v. Kent*, 821 So. 2d 408, 410 (Fla. 4th DCA 2002)); *Consol. Energy*, 920 So. 2d at 832; *Thompson v. Doe*, 596 So. 2d 1178, 1180-81 (Fla. 5th DCA 1992), *approved on other grounds*, 620 So. 2d 1004 (Fla. 1993).

We join the Second, Third, Fourth and Fifth Districts in rejecting Appellant's argument for two reasons. First, as the trial court found in its order on appeal, the use of the word "act" in "[c]ommitting a tortious act within this state" necessarily focuses on where the defendant committed the "act," not where the injuries from that act might be felt. *See Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013). The statute does not refer to "committing a tort," which may have provided some basis to focus on the damages resulting from the tortious act since a tort is committed when the last element occurs. *See Thomas Jefferson Univ. v. Romer*, 710 So. 2d 67, 71 (Fla. 4th DCA 1998) (Farmer, J., concurring); *see also Bedwell v. Rucks*, 127 So. 3d 533, 535 (Fla. 4th DCA 2012) ("A cause of action accrues when the last element necessary to complete it occurs."). Instead, the legislature made personal jurisdiction under this provision dependent specifically on the commission of a "tortious act" in Florida, plainly placing the focus of the statute

15

on the act itself rather than the damages that result from that act. Thus, "wherever the damage element in a given case might occur, it is the commission by the defendant of the act itself—setting into motion the various elements that combine to make a tort—that is the critical test for jurisdictional purposes." *Thomas Jefferson Univ.*, 710 So. 2d at 71 (Farmer, J., concurring).

Second, as the trial court also noted and as Appellant's counsel conceded at oral argument, Appellant's reading of Section 48.193(1)(a)2. would render Section 48.193(1)(a)6. meaningless. Section 48.193(1)(a)6. specifically addresses personal jurisdiction for "[c]ausing injury to persons . . . within this state arising out of an act or omission by the defendant outside this state." The legislature provided two specific conditions that, if either is present, give rise to personal jurisdiction for out of state tortious acts causing injury within Florida. If Section 48.193(1)(a)2. provides personal jurisdiction over a defendant for any out of state tortious act of a defendant that causes injury in Florida, then Section 48.193(1)(a)6. would be pure surplusage and have no effect whatsoever. *See Hechtman v. Nations Title Ins. of N.Y.*, 840 So. 2d 993, 996 (Fla. 2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute, if possible, and words in a statute should not be construed as mere surplusage.").

For these reasons, we hold that mere injury in Florida resulting from a defendant's tortious act committed wholly outside of the state is insufficient to confer personal jurisdiction under Section 48.193(1)(a)2. Rather, Section 48.193(1)(a)2. requires the commission of a tortious act within the State of Florida, just as the statute says. Accordingly, Appellant's allegations that the Appellees committed acts and omissions in New York that injured Palmer in Florida did not allege a basis to establish long-arm jurisdiction over the Appellees under Section 48.193(1)(a)2.

We note Appellant's assertion that the First District agreed with her argument in *Dean*. However, we do not read *Dean*'s holding as to Section 48.193(1)(a)2.[8] as broadly as Appellant, and we therefore do not find ourselves in conflict with it.[9] In sum, *Dean* is distinguishable from this case because the doctor in *Dean* that the First District found committed a tortious act within Florida, while physically located in Alabama, was licensed to practice medicine in Florida and acted as a key and active participant in the plaintiff's healthcare treatment that actually occurred in Florida. This is not analogous to Dr. Yoon and Dr. Hwang, who did not actively participate

---

[8] *Dean* was decided under a prior version of Section 48.193, Florida Statutes. In the prior version of the statute, Section 48.193(1)(a)2. was numbered as Section 48.193(1)(b). However, the language of this provision was the same in all material respects.

[9] As explained above, this decision is in conflict with *Dean*'s holding regarding Section 48.193(1)(a)6.b.

in any of Palmer's healthcare treatment in Florida. Moreover, it appears that the First District itself does not read *Dean* as broadly as Appellant. In a case that actually cited *Dean* for the more limited proposition that "physical presence within Florida is not a requirement for personal jurisdiction," the First District explicitly stated that the plaintiff's injury in Florida, "by itself, is not enough to find that [the defendant] committed a tort within the state." *Samsung SDI Co., Ltd. v. Fields*, 346 So. 3d 102, 107 (Fla. 1st DCA 2022). Thus, to the extent there is any ambiguity in *Dean*'s holding as to Section 48.193(1)(a)2., the First District itself does not appear to interpret *Dean* as placing it in conflict with our holding in this case. For this reason, we decline to certify conflict with *Dean* as to its holding regarding Section 48.193(1)(a)2.

### ii. Communications directed into Florida

Appellant also argues that in addition to Dr. Yoon's and Dr. Hwang's out of state tortious acts that caused injury in Florida, the doctors also committed tortious acts in Florida when they directed communications into Florida, which consisted of their written reports and Dr. Yoon "contacting" Palmer's Florida healthcare providers about his diagnosis and his professional opinion regarding her condition. The Florida Supreme Court has held that "[c]ommitting a tortious act within Florida under section [48.193(1)(a)2.] can occur by making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such

communications." *Arch Aluminum*, 964 So. 2d at 232 (citing *Wendt*, 822 So. 2d at 1253). However, Appellant's allegations do not satisfy this holding.

First, the second amended complaint does not allege that Dr. Yoon and Dr. Hwang sent or otherwise directed their written reports *into* Florida. The complaint only alleges that the reports, which were made in New York, were ultimately used in Florida. Without an allegation that Dr. Yoon and Dr. Hwang actually sent their reports into Florida, Appellant has not alleged that Dr. Yoon and Dr. Hwang committed a tortious act in Florida by sending a communication into the State of Florida.

Second, as to the allegation that Dr. Yoon "contacted" Palmer's Florida healthcare providers, the second amended complaint did not allege that Dr. Yoon committed any tortious act during this unspecified form of contact.[10] The Florida Supreme Court has made clear that in order for a communication directed into Florida to constitute "committing a tortious act within Florida," the plaintiff's cause of action must arise from the communication itself. *Arch Aluminum*, 964 So. 2d at

---

[10] We leave aside the issue of whether Appellant can allege that Dr. Yoon directed a communication *into Florida* merely by alleging that he made some unspecified form of contact with Palmer's Florida healthcare providers. Without specifying the type of contact or any further detail, it is impossible to discern whether Dr. Yoon's communication was actually directed into or accessed in Florida. For example, if Dr. Yoon called one of Palmer's Florida doctors and the doctor answered and took the telephone call while he was located in a different state, then Dr. Yoon would not have directed the telephone call into Florida.

232 (citing *Wendt*, 822 So. 2d at 1253); *Consol. Energy*, 920 So. 2d at 831-32 ("While telephone communications may provide a basis for personal jurisdiction, it only occurs when those communications give rise to the cause of action."). Because the plaintiff's complaint did not allege that Dr. Yoon committed a tortious act when he contacted Palmer's Florida healthcare providers, the complaint did not successfully allege that Dr. Yoon committed a tortious act in Florida by sending a communication into the State of Florida.[11] *See Arch Aluminum*, 964 So. 2d at 232 (holding that an email directed into Florida did not constitute the commission of a tortious act in Florida because the email did not give rise to the plaintiff's cause of action); *Consol. Energy*, 920 So. 2d at 832 (holding that a telephone communication directed into Florida did not create a basis for personal jurisdiction under the predecessor provision to Section 48.193(1)(a)2. because the communication was not the basis for the plaintiff's cause of action); *Mulligan v. Frank Found. Child Assistance Int'l*, 584 F. Supp. 2d 1332, 1334-35 (M.D. Fla. 2008) ("Thus, the representations made during the phone call are insufficient to form the basis of the Court's long-arm jurisdiction over Defendant, because they did not give rise to all of the elements required to create a tort.").

---

[11] Of course, even if this allegation had provided a basis for personal jurisdiction over Dr. Yoon, it would not provide a basis for jurisdiction over Dr. Hwang since the second amended complaint does not allege that Dr. Hwang contacted Palmer's Florida healthcare providers.

20

## Conclusion

For the reasons detailed above, Appellant's second amended complaint did not allege a basis for long-arm jurisdiction over the Appellees. Because Appellant failed to meet her initial burden to plead a basis for long-arm jurisdiction over the Appellees, we need not consider the affidavits filed by either party or reach the constitutional minimum contacts prong of the *Venetian Salami* two-step process. The trial court was correct to grant the Appellee's motion to dismiss for lack of personal jurisdiction and we affirm its order. In doing so, pursuant to Article V, Section 3(b)(4) of the Florida Constitution, we certify this decision to be in direct conflict with *Dean* as to its holding concerning Section 48.193(1)(a)6.b.

AFFIRMED. CONFLICT CERTIFIED.

McFEE, S.H., Associate Judge., concurs.
BROWNLEE, J., concurs specially, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

_____

BROWNLEE, J., concurring specially.

I agree with the majority's disposition in full, but I do not join in a portion of section III(a)ii. In particular, I agree Appellant's argument—that Dr. Yoon and Dr. Hwang are subject to personal jurisdiction under section 48.193(1)(a)6.b.—fails because the second amended complaint contains no allegation that "at or about the

21

time of the injury" "products, materials, or things processed, serviced, or manufactured by the defendant[s] . . . were used . . . within this state in the ordinary course of commerce, trade, or use." As the majority rightly concludes, "[w]ithout the temporal connection required by the statute, Appellant has not alleged a basis to establish long-arm jurisdiction over the Appellees under section 48.193(1)(a)6.b." But I would end the discussion of section 48.193(1)(a)6.b. there, as the additional analysis is unnecessary to our disposition of the case.

_____

Kara Rockenbach Link and Daniel M. Schwarz, of Link & Rockenbach, P.A., West Palm Beach, and Carlos R. Diez-Arguelles and Maria D. Tejedor, of Diez-Arguelles & Tejedor, P.A., Orlando, for Appellant.

Christopher Brown, of Kaufman Dolowich, LLP, Orlando, for Appellees.